IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON MCCARY,<br>　　Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 24-CV-5137 |
| WELLPATH, LLC, *et al.*,<br>　　Defendants. | :<br>:<br>: |

### MEMORANDUM

YOUNGE, J.                                                                                       OCTOBER 7, 2025

Plaintiff Cameron McCary, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related state law claims arising from alleged indifference to his serious medical needs.  Currently before the Court are McCary's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4), and his Prisoner Trust Fund Account Statement.  (ECF No. 5.)  McCary asserts claims against Wellpath, LLC ("Wellpath"), and Wellpath employees Dr. Letizio, Physician's Assistant ("PA") Miller and PA Elliott.  (Compl. at 4-6.)  For the following reasons, the Court will grant McCary leave to proceed *in forma pauperis*, dismiss his constitutional claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismiss his state law claims without prejudice for lack of subject matter jurisdiction.  McCary will be granted leave to file an amended complaint to establish the existence of subject matter jurisdiction.

I.      **FACTUAL ALLEGATIONS**[1]

The gravamen of McCary's claim is that he did not receive proper care for injuries to his neck and back that occurred before he arrived at SCI Phoenix, in violation of his constitutional rights  (*See* Compl.)  Regarding these injuries, he alleges that beginning in 2010, he experienced back pain, for which he sought treatment in approximately 2017. (*Id*. at 6.)  In 2020, he fractured his neck in a work-related incident. (*Id*.)  He experiences intense pain in his back and neck related to these injuries, for which he has been prescribed Naproxen, Valium and other pain medication prior to his incarceration. (*Id*.)

In or about June 1, 2024, while he was incarcerated at SCI Phoenix, McCary began submitting sick call slips to the medical department because he was experiencing unbearable pain in his neck and back. (*Id*.)  McCary was seen by Defendant Elliot, who prescribed Tylenol. (*Id*. at 6-7.)  This medication was not effective, and McCary submitted another sick call slip and was next seen by Defendant Miller, who prescribed Celebrex to treat McCary's pain. (*Id*. at 7.)  McCary submitted approximately six to seven additional sick call slips, and avers that, while he detailed the history of his injuries when he was seen by Elliot and Miller, both refused to include this information in his medical file. (*Id*.)  He alleges that eventually, he "started using phrases such as 'deliberate indifference' and 'inadequate treatment' to induce better care." (*Id*.)  Subsequently, Miller ordered an x-ray of McCary's neck, but not his back as McCary had requested. (*Id*. at 8.)  Upon review of the x-ray, Miller diagnosed osteoarthritis, a diagnosis with which McCary disagreed, based on his past medical care. (*Id*.)  McCary alleges that Elliot, too,

---

[1] The factual allegations set forth in this Memorandum are taken from McCary's Complaint (ECF No. 1).  The Court adopts the pagination supplied by the CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in McCary's pleading will be corrected for clarity.

opined that McCary had a mild form of osteoarthritis that should not be painful. (*Id*.) McCary disagreed with this opinion, alleging that, in fact, he was experiencing serious pain. (*Id*.)

McCary sought further care and alleges that when he used the word "Malpractice," Miller ordered additional x-rays of his back. (*Id*. at 9.) Upon review of the x-rays, Miller advised McCary that he was "totally fine." (*Id*.) His Celebrex was discontinued, and he was prescribed Ibuprofen and a cream, which McCary alleges were ineffective in treating his pain. (*Id*.) He was next prescribed 800 mg of Ibuprofen to address his pain. (*Id*.) McCary informed Miller that this was ineffective and that he required stronger medication. (*Id*.) Miller allegedly responded that he would not receive different medication, and that Ibuprofen was the "one drug cure all" available. (*Id*.) McCary alleges that he requested that an MRI be performed, but that Dr. Letizio, who allegedly never examined McCary, informed him that he did not need an MRI because his injuries did not warrant one. (*Id*. at 10.) He further alleges that Elliot's refusal to include McCary's detailed medical history in his record prevented Letizio from exercising sound judgment regarding his care. (*Id*.) He claims that as a result of the Defendants' conduct, he has experienced intense lower back pain, neck and shoulder strain, severe stiffness, headache, loss of sleep, fatigue, cramps, loss of mobility, and related physical injuries. (*Id*. at 17.) He asserts Eighth Amendment and state law professional negligence claims against the individual Defendants. (*Id*. at 11, 15, 16-17.) Additionally, he asserts a claim against Wellpath, based on its alleged creation and enforcement of a policy of "downplaying" inmates' injuries in order to

save on costs. (*Id*. at 8, 12, 19.) He seeks a declaratory judgment[2] and money damages.[3] (*Id*. at 14.)

---

[2] Declaratory relief is unavailable to adjudicate past conduct, so McCary's request for this relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[3] McCary also asserts that the prison grievance system available at SCI Phoenix is inadequate. (Compl. at 12-14.) He does not, however, allege that any of the named Defendants participated in the allegedly inadequate grievance system. Even if he had, or had he identified another individual responsible for the alleged inadequacy of the system, a claim based on the adequacy of the prison grievance system is not plausible. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by McCary predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (*per curiam*) ("any allegations of improprieties in the handling of his grievance" do not raise constitutional concerns and do "not state a cognizable claim under § 1983."); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

McCary also claims in passing that the Defendants engaged in the conduct he describes for the purpose of "retaliation." (*Id*. at 16.) To the extent McCary intended to assert a retaliation claim, it is wholly undeveloped and implausible because a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL

## II.   STANDARD OF REVIEW

The Court will grant McCary leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As McCary is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Additionally, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

---

6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).

[4] Because McCary is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

### III.   DISCUSSION

McCary asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

####    A.    Deliberate Indifference Claims

McCary asserts Eighth Amendment deliberate indifference claims against Letizio, Elliot, and Miller. He alleges that beginning on June 1, 2024, he submitted numerous sick call slips to the medical department because he was experiencing pain in his neck and back. (Compl. at 6.) He was seen on several occasions by Defendants Elliot and Miller, who prescribed at various times Tylenol, Celebrex, Ibuprofen, and a cream to treat his pain. (*Id*. at 6-9.) He also alleges that at his request, they obtained x-rays of his neck and back and diagnosed osteoarthritis, a

diagnosis with which he disagreed. (*Id*. at 7.) He alleges that Dr. Letizio refused to order an MRI as he had requested because, in the doctor's opinion, McCary's condition did not warrant one. (*Id*. at 10.) He claims that these Defendants were deliberately indifferent to his serious medical needs, and that, as a result of the Defendants' conduct, he has experienced intense lower back pain, neck and shoulder strain, severe stiffness, headache, loss of sleep, fatigue, cramps, loss of mobility, and related physical injuries. (*Id*. at 17.) McCary's claims, as pled, are not plausible.

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Inadequate medical care rises to the Eighth Amendment level only when a plaintiff can show both a serious medical need and acts or omissions by prison officials that indicate

7

deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. 97, 102, (1976). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

McCary concedes that he received various treatments for his pain, and that at least some of the diagnostic tests he requested were performed. He disagreed with the interpretation of his diagnostic tests, the diagnosis of the source of his pain provided by Defendants Elliot and Miller and further disagreed with Dr. Letizio's refusal to order an MRI, but his claim, as pled, is based on the adequacy of the care he received, not on a denial of care. Mere disagreement with a prison medical provider's treatment plan is insufficient to allege a plausible deliberate indifference claim. *See Ryle v. Fuh*, 820 F. App'x 121, 123-24 (3d Cir. 2020) ("Ryle also cannot show deliberate indifference with regard to Nurse Green or Dr. Jackson because he expressed

only "mere disagreement" with their post-surgery treatment plan."). As such, he has not stated a plausible claim for deliberate indifference to his serious medical needs. *Davis*, 597 F. App'x. at 45. McCary's claims will be dismissed. He will not be granted leave to amend these claims as to do so would be futile.

### B. Claim Against Wellpath

McCary asserts a claim against Wellpath based on its alleged policy of minimizing inmates' health complaints. (Compl at 8, 12, 19.) However, because the Court has determined that McCary has not plausibly alleged a violation of his constitutional rights by Letizio, Elliot, or Miller, his derivative claim against Wellpath cannot proceed. *See Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (*per curiam*) (stating that policy makers could not be liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs, where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). This claim will be dismissed with prejudice.

### C. State Law Claims

Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over McCary's state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is

some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). To determine the citizenship of a corporation for purposes of diversity under § 1332, courts use the test announced by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Under *Hertz*, a corporation is a citizen of its state of incorporation and its principal place of business, i.e., its "nerve center." *Id.* at 80-81. A nerve center is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is typically "found at a corporation's headquarters." *Id.* It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

  McCary alleges that he is a citizen of Pennsylvania, but provides for himself only the address of SCI Phoenix, where he is currently incarcerated, and the St. Petersburg, Florida

address used by Smart Communications.[5]  (Compl. at 4.)  He does not allege where he was domiciled before he was imprisoned.  He does not allege the citizenship of the individual Defendants and provides only the address of SCI Phoenix as their place of employment.  (*Id*. at 5.)  McCary alleges that Wellpath is organized and operating under the laws of the Commonwealth of Pennsylvania, and that its main business address is in Harrisburg, Pennsylvania.  (*Id*. at 4.)  This suggests that Wellpath is a citizen of Pennsylvania.  *See Hertz*, 559 U.S. at 80-81.  As alleged, McCary and Wellpath are both citizens of Pennsylvania and complete diversity between the parties does not exist, thus preventing the Court's exercise of diversity jurisdiction.  His state law claims will, accordingly, be dismissed.  McCary will be granted leave to amend his Complaint to clarify this issue.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant McCary leave to proceed *in forma pauperis*, dismiss his constitutional claims with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismiss his state law claims without prejudice for lack of subject matter jurisdiction.  McCary will be granted leave to file an amended complaint to establish the existence of diversity jurisdiction or he may refile his medical malpractice claims in state court where diversity of citizenship will not be in issue..

An appropriate Order follows.

**BY THE COURT:**

  /s/ *John Milton Younge*  
**JOHN M. YOUNGE, J.**

---

[5] Smart Communications is a mail processing center with which the Pennsylvania Department of Corrections has contracted.  *See* DC-ADM 803 ("[a]ll incoming non-privileged inmate correspondence must be addressed and sent to the Department's contracted central incoming inmate processing center.")